THE FARMERS FUND, INC., Appellant, *v.* RALPH TOOKER,
Respondent.

Fourth Department, November 14, 1923.

Replevin — plaintiff held chattel mortgage on cattle — cattle were in possession of defendant who was working farm on shares — plaintiff engaged man in fall of 1921 to appraise cattle and report as to advisability of sale — sale was not made until following spring — defendant claims lien for feeding stock based on agreement with appraiser — no proof that appraiser had authority to make agreement — lien not shown under Lien Law, § 183 — error to charge that if plaintiff took advantage of what appraiser did then it ratified his agency.

The defendant did not have a lien under section 183 of the Lien Law on certain cattle, the possession of which this action in replevin was brought to recover, since it appears that the owners of the cattle gave a chattel mortgage to the plaintiff covering them; that subsequently the defendant became a tenant on shares of the farm, including the cattle; that in the fall of 1921 the plaintiff asked a man residing near the farm to appraise the cattle and to report on the advisability of an immediate sale; that this man reported that it was not advisable to sell at that time and the sale was not made until the following spring when the defendant refused to give up possession under a claim that he had a lien on the cattle for board based on an agreement made with the appraiser to the effect that if defendant would feed the cattle through the winter the appraiser would see that he was paid.

A lien did not arise under section 183 of the Lien Law, since it was not shown by the defendant that the appraiser was the agent of the plaintiff and authorized to act for it in making the alleged agreement, nor was it shown that the plaintiff had held out said appraiser as its agent so that his authority might be inferred from such holding out.

It was error for the court to charge that if the plaintiff took advantage of what the appraiser did then it ratified his agency, since there is no evidence that the plaintiff ever had knowledge of the alleged agreement made between the defendant and the appraiser.

APPEAL by the plaintiff, The Farmers Fund, Inc., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Oneida on the 30th day of January, 1923, upon the verdict of a jury, and also from an order denying the plaintiff's motion for a new trial made upon the minutes.

*Harold L. Fuess* [*Isaac Adler* of counsel], for the appellant.

*Oscar J. Brown,* for the respondent.

DAVIS, J.:

The plaintiff brings this action as owner to recover possession of certain cattle alleged to have been wrongfully detained by defendant, together with damages for such wrongful detention. The defendant alleges a special property in said cattle arising from

a lien for their board, created by agreement with the owners. The verdict was for the defendant.

The facts not in dispute, and those which we may assume for the purposes of this appeal to be established by the verdict of the jury, are these: F. H. Kline and L. W. Baker were the owners of a farm and the personal property thereon at Augusta, Oneida county. On June 22, 1920, they applied to the plaintiff for a loan of upwards of $3,000 for which they were to give their note, offering as security cattle and tools on their farm. The loan was made and a chattel mortgage given and filed, and thereafter duly renewed. Two small payments were made on the note. About November 1, 1920, the defendant became a tenant on shares on the farm. Eighteen of the cattle covered by the mortgage were then on the farm, and he took them as a part of the property in the proceeds of which he was to share. This tenancy continued until December, 1921. At that time defendant made a contract to purchase the farm and an undivided half of the hay and grain. Shortly prior to this time the plaintiff had become concerned about its debt and proceeded to make an investigation as to the security, and what steps it would pursue. An officer of plaintiff wrote to a Mr. Hatch, evidently residing at Waterville in the vicinity of the farm. The substance of the letter was that one of the makers of the note had refused to sign a renewal and it became necessary to foreclose and take judgment, and that plaintiff wanted information before it decided what to do; and Hatch was asked to go with a copy of the chattel mortgage, make an appraisal of the stock and tools covered by the mortgage, to advise whether he thought it possible to obtain a buyer in the vicinity who would take over the stock and give a note, to consult with another mortgagee on the tools and ascertain the amount due him and his attitude, and to report on the general condition of the farm. Hatch took with him to the farm two men, Jones and Barrett, who lived in the neighborhood, to assist in appraising the property. He reported to the plaintiff and the latter also received some information in a letter from the attorney now representing defendant. All agreed that the time was not advantageous for a foreclosure sale of the cattle.

In the spring of 1922 the plaintiff directed its local attorney to foreclose the chattel mortgage. He prepared a notice of foreclosure, appointed a day of sale, posted the notices, sent some to defendant for posting, and went to the farm to conduct the sale on the day appointed. The defendant then refused to surrender possession. Proper demands were made on him. Defendant gave as his reason for refusing to deliver possession that he had a claim on the cattle, without stating what it was. This action was brought and he

interposed the defense that he had a lien on the cattle for board. It does not appear that he ever asserted a lien for board until after the action was brought.

It developed on the trial that the alleged lien arose in an agreement made with Hatch. The testimony on defendant's behalf was, that when it appeared at the time of Hatch's visit it was an unfavorable time to sell the cows, Hatch asked defendant if he had enough fodder to carry the cows through the winter and was told that he had; that Hatch verified it by looking at the hay and ensilage, and then told defendant to take care of the stock until he heard further from him, and that Hatch would see he was paid for it.

Assuming that the language used by Hatch was intended to obligate the plaintiff rather than himself personally, the principal question here is whether the defendant acquired a lien under section 183 of the Lien Law on the cattle for their board by an agreement made with a duly authorized agent of the plaintiff.

It is perhaps necessary to state a few elementary principles. A corporation must act through its officers or agents. The officers charged by law, by the by-laws or action of the board of directors with managerial or administrative authority, are thereby clothed with power to bind the corporation by their agreements. Agents appointed by the managing officer or the board of directors and given general authority have like powers. So also have agents appointed to perform a particular duty within the limited scope of their authority. Other persons not granted any authority may bind the corporation if they have been held out as agents and parties knowing that fact have dealt with them in reliance thereon. And if a person never held out as agent of the corporation has assumed to act in its interest and has made a contract with another which the corporation ratifies with knowledge of the facts, by word or act, then the law will say the corporation is bound.

But where the fact of the agency of a person is not admitted and such person is not an officer with express or implied authority, it is essential that proof be made of the agency, if a party wishes to establish the liability of a corporation on a contract he has made with one he believed to be an agent.

Hatch was not an officer of plaintiff. His actual authority, so far as it appears, was limited by the letter heretofore mentioned. This letter did not give power to make the agreement on which defendant relies. If he had any greater authority, it was the duty of the defendant to establish that fact by proof from the officers of the plaintiff, from its records, or by other competent evidence. If defendant relied on the appearance of authority, he was required to make proof that Hatch had been held out as possessing general

powers to contract. The evidence produced was limited to conclusions of witnesses present at the time the alleged contract was made, based on no facts of which they had knowledge, and the declarations of Hatch himself. These are insufficient. Defendant had knowledge from Hatch that he came to look at and appraise the stock, and there was no holding out or appearance of authority for which plaintiff was responsible upon which defendant might rely. In fact, it is evident that defendant relied on the appearance of authority caused by the acts and declarations of Hatch. Defendant in attempting to make a contract with plaintiff through the agreement with Hatch, was bound to know that he possessed authority, either as an officer or agent of plaintiff. (*Edwards* v. *Dooley*, 120 N. Y. 540; *Porges* v. *U. S. Mortgage & Trust Co.*, 203 id. 181; *Dudley* v. *Perkins*, 235 id. 448; *Schutz* v. *Jordan*, 141 U. S. 213.)

The statements and declarations of an agent are competent, once the agency is established, when pertinent to the issue (*Murray* v. *Sweasy*, 69 App. Div. 45), but they may not be used to establish his authority. (*Taylor* v. *Commercial Bank*, 174 N. Y. 181, 191; *Booth* v. *Newton*, 46 App. Div. 175; Wigm. Ev. § 1078.)

Defendant's counsel requested the court to charge that if Hatch did not at the time have authority from the plaintiff, if the jury found that subsequently plaintiff took advantage of any agreement he made, it was subject to whatever terms he then imposed. The court said: " Yes, I certainly charge that if they took advantage of what this man did, then they ratified his agency and they cannot recover." We think the rule too broadly stated as applied to the facts. There was no evidence that the plaintiff ever had knowledge of the alleged agreement made by Hatch. These cows were on the farm in charge of defendant who had taken them under his agreement to work the farm on shares. It was his duty to maintain them until surrendered or until some new agreement was made. There were no changed conditions or circumstances to put the plaintiff upon inquiry. A principal may ratify the unauthorized act of an assumed agent only with full knowledge of the material facts so that it can be said he intended to ratify the act. (*Prichard* v. *Sigafus*, 103 App. Div. 535; *Dunning* v. *County of Orange*, 139 id. 249; affd., 204 N. Y. 647; *Weber* v. *Bridgman*, 113 id. 600; *Schutz* v. *Jordan, supra.*)

For the reasons stated the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

All concur.

Judgment and order reversed upon the law and facts and new trial granted, with costs to appellant to abide event.